The next case on our calendar is Fields v. Saul. We've substituted the current commissioner for Social Security. Mr. Jones, you may proceed. Jones Thank you, Your Honor. Daniel Jones appearing on behalf of the plaintiff, Jim Fields, in this case. Though I'd also be remiss to point out that the true party and interest in this case is the attorney who appeared on the District Court below, which is Charles Bender. As you all know, counsel for plaintiff petitioned the court below for an award of attorney's fees under the Social Security Act in the amount of $40,170, which represented 25% of the claimant's past year benefits. The court ultimately awarded only $19,350, which represented approximately 12% of the claimant's past year benefits. I think the case here is... Ginsburg The District Court thought it was a windfall because of the number of hours, but the number of hours was indicative of the expertise, wasn't it, that Mr. Bender brought to this case? Is that why he could do it in 25 hours? Jones Exactly, Your Honor. So there's really two main points I think are critical to this case. And before I get to addressing specifically the windfall issue, I just want to point out that no party in the District Court objected to the fees in this case. Mr. Fields originally agreed to a 25% fee when this case first went to the District Court. That was in 2014. Following additional administrative proceedings, this case was denied. Ginsburg But it's very easy to agree to 25% when you've got nothing. It's a little harder to agree to 25% when you've gotten some money, and that money will either go to the lawyer or it's out of your pocket. The problem with this case to me is, on the one hand, this is money that the handicapped person, the disabled person needs. On the other hand, we want lawyers to take these cases. We're caught in the middle. Jones Absolutely, Judge Calabresi. I couldn't agree with you more. And I think that it's critical that this court address those two conflicting principles. One is that claimants have effective and efficient representation in handling their cases before the District Court, but also protecting the claimant's rights to a degree. And I think that the windfall factor does just that. It's the fact that the District Court did not correctly apply the windfall factor is the issue here. And I also would note that Mr. Fields was provided with copies of the motion after we knew exactly how much the fees were going to be and did not object to those fees when the case was before the District Court. Judge Calabresi Counsel, do you know if Mr. Binder ever tried a case to conclusion and got no fees because the petitioner didn't achieve any relief? Binder Filed a motion for fees and received no fees? Judge Calabresi Yes. Binder That's the question. Not that I'm aware of. Judge Calabresi So they always get fees, even if the plaintiff doesn't recover any money from Social Security? Binder Well, if there's no recovery from Social Security, and there's an award of fees under the Equal Access to Justice Act, which is common, typically, what would happen is that would be the only fee that the attorneys would receive for the District Court work. Judge Calabresi But if there were none... Binder But if there's no recovery, do they still get fees? Binder If there's no recovery, no, no. It's 25% of past due benefits. Judge Calabresi So if Mr. Binder, or you, represents someone at several levels of proceedings against the commissioner, ultimately, and finally lose, and the plaintiff, in that case, gets nothing, you get nothing under EAJR? Binder Well, there may be an award of Equal Access to Justice Act fees when the case is remanded. But if the claimant ultimately never obtains Social Security benefits, then there would be no additional fee. Judge Calabresi And it only goes back, those fees are only available if the government took a position that is essentially indefensible. Binder Correct, Your Honor. Judge Calabresi But my problem is, we have a previous case that says it's okay, where the disabled person actually agreed. We have a third clause of what the Supreme Court has said that, of course, if it's more than 25%, if it is a degree of wrongdoing or delay, and then there's this third clause about what is excessive. What does that mean? Binder Exactly, Your Honor. I understand that some judges are frustrated with this. And even if you read Justice Scalia's dissent in Gisbert, expresses frustration about this. And I think that the easiest way to read Justice Ginsburg's majority opinion is that when she says, after considering if there's fraud or delay, then we move on to the windfall factor. And she says as an aid to determining if there's a windfall, then the courts can look at what could be the attorney's normal non-contingent hourly rate. The error in this case is the fact that the district court never made that initial finding of there being a windfall. A windfall doesn't just occur based on the hourly rate alone. Justice Breyer I have trouble with saying, seeing that the district court didn't look at what was going on. The court looked and it said $1,700 an hour is too much, or whatever, $1,500, whatever the figure was, and that instead $750 is the correct amount. And I think the court went through all the moves, and I just don't know what we're to make of that. Are we to say that unless the disabled person objects, we're covered by the situation where the disabled person said, okay, which is where your argument seemed to be going? Or are we to look at something else? Give us something that could tell us what we do in the, what the district courts do in the future. Justice Breyer Yes, Your Honor. I actually think that the district courts have done a remarkably good job of handling these cases in general. And I think that this court should actually adopt a rule that many of the district courts have relied on, and that's this windfall factors test. So it's a three part test. The first one is to make a determination whether the attorney's efforts were particularly successful for the claimant. Secondly, whether the effort expended by the attorneys were not boilerplate, and involved real issues of material facts and legal research. And finally, whether the case was handled efficiently. Interestingly enough, the district court... Justice Breyer That looks like the second clause of what the Supreme Court said, rather than the third clause. Justice Breyer The second clause being delay? Justice Breyer Yeah, being delay and efficiency and so on. Justice Breyer Well, I think delay refers more to the fact of when the case was in district court, were plaintiff's attorneys asking for excessive sort of drag the case out in terms of... Justice Sotomayor Are we supposed to look, as Judge Pooler suggested, at how much of an expert this person is? How many cases this expert loses and doesn't get anything to discuss whether there's windfall? Is that what we're supposed to look at, to see whether 25% makes sense? Because 1,500 actually turns out to be 750. If even with a most talented person, you lose half the cases? Is that what we're supposed to look at? And how do we look at it? Justice Breyer So I think that goes to the third part of this three-part test of the windfall factor. And how much experience did the attorney have that they were able to handle the case efficiently? For example, in this case, the attorneys expended 25.8 hours in the case. And that was what ended up in this fictitious hourly rate being so high. But if counsel in this case had handled the case in 53.6 hours, then it would have come out to the $750 de facto rate that the district court found reasonable. And so the fact that counsel had so much experience in this area of law, were able to be expended on this case, was a factor that one of the factors at least it should have been considered. Certainly, 54 hours would not have been an excessive or unreasonable amount of time to spend on the case for someone who wasn't as experienced as counsel here, given the record. I think it was a nearly 900-page record. There was many issues that were argued in front of the district court that's in the brief. I believe it's part of the appendix. Counsel, you have reserved two minutes for rebuttal. Let us hear from the government. Thank you. May it please the court. Assistant United States Attorney Joseph Pantoja for the Commissioner. The district court's award of sections 406B fees in the amount of $19,350 qualifies for highly done for actual review under the abuse of discretion standard. Doesn't that amount not take account as we've been discussing with the expertise brought to the case by the practitioner who did this in 25 hours? It might have taken a less experienced practitioner to spend 50 hours or 56.8 or whatever he said twice the time. He was good at it. He had done lots of cases like this. Should he be punished for that? No, Your Honor, he should not be punished. Judge Aaron did consider the expertise and the efficiency of counsel in this case after considering what the Supreme Court in Gisbrecht required, which is starting with the contingency fee agreement and then also applying the factors that are required by this court in Wells. The third factor goes to the reasonableness of the amount of the fee requested. And in that connection, Judge Aaron did note that counsel was experienced, had not unreasonably delayed proceedings, had written submissions that were specifically well supported and achieved a good result. Well, it seems to me, please point me to the support in the record for the assertion you just made, because as I read the record, I didn't see any basis for the district court's choice to lower the fee other than disagreement with the lodestone. That's all she said. No, no, the court in Wells, the problem that would happen in Wells was that the district court had essentially applied the lodestone method without addressing any additional factors that go toward the reasonableness. In this case, Judge Aaron did acknowledge the work that was done. But in this particular case, it did not happen in a vacuum. The effective hourly rate must be taken into consideration with the fact that in this case, counsel had already been awarded EGF fees at a fixed rate of $200 an hour, EGF fees, equal access to Justice Act fees in the amount of $200 an hour. And we've noted, it was noted in the case that we cited in our brief, the Sueda case, the Eastern District of New York case cited at pages 16 of our brief, that Bender's standard non-contingent rate in a non-contingency fee case is approximately $200 an hour. In that context, that means that Judge Aaron... But counsel, practically speaking, a lawyer who is going to lose any number of these cases, because we've seen that, is not going to take a case unless in the case that that lawyer wins, that lawyer gets more than the lodestone. And the fact that the government's position in this case was sufficiently outrageous, that the government had to pay the equal access to justice fee is something that happens, but we hope it doesn't happen that often. Despite the government's taking positions that are difficult, this case went back and forth two or three times. So just in terms of realistically giving these people lawyers, and if they don't have lawyers, they lose. Aren't we doing more harm than good? The reason I was referencing the Equal to Access Justice Act fixed rate of $200 an hour, and the fact that Bender charges about $200 an hour in non-contingency fee cases, is that it puts into proper perspective the effective hourly rate that Judge Aaron awarded in this case, because that was three and a half times what he receives in non-contingency fee cases, therefore implicitly accounting for that risk of non-payment. If he had said, for instance, in this case, because they've already gotten $200 an hour, $1,500 is too much, and we should make it $1,300. I don't know whether I'd agree, but I would see that they were doing a link between that and this, but that's not what this judge did. No, but that is also not what I was arguing, Your Honor, with all due respect. Bender's counsel, at pages 15 to 16 of their brief, cited statistics suggesting, and he also repeated it at argument, that only 50% of the cases that is brought in the district courts end up getting remanded, and that only two-thirds of those, or 67%, end up, well, that's a lot, up to 67%, end up resulting in past due benefits. What that means, at the end of the day, is that 33% of the cases that are brought in district court end up resulting in past due benefits, and therefore a Section 406B award. The proper way to account for the risk of non-payment, where the contingency fee applies, would then be to award three times the standard or fixed rate that Bender would receive in a non-contingency fee case. That would mean $600 an hour, and Judge Aaron here, in this case, awarded $25% more than that, $750 an hour, and not just in a vacuum. Judge Aaron looked at the cases that he's had with Judge Bender, with the Bender Law Firm, in similar circumstances. What good lawyers who aren't working for the government are getting paid at $200 an hour? The relevant consideration, yes. It's hard to get a plumber for $200 an hour. I don't mean to insult plumbers, but better than most lawyers we see. That may be true, Your Honor, but the fact is that the firm that was involved in this case is Bender and Bender, and the fact is that Bender and Bender charges about $200 an hour in non-contingency fee cases. That means that that's what they want, that that's what they're And the EJ award in this case happens to be about the same, about $200 an hour. When Judge Aaron awarded an effective rate of $750 an hour, that was three and a half times that, and it was also 50% more than Judge Aaron had awarded in a similar case in terms of what happened in the district court. That's the Edwards case that involved Bender and Bender. Judge Aaron awarded $500 an hour, and another case that didn't involve Bender and Bender, Judge Aaron noted in the, for some reason it's escaping, oh, the Espada case also awarded $500 an hour. Those cases are similar because in the district court the matter was remanded after plaintiff filed their brief, and that's it. There was no, there's no argument, there were no court appearances, there were no other, there's no other involvement, and it also involved the So Judge Aaron reasoned by considering that prior history, not only with dealing with four or six fee awards in general, but with this particular law firm, Judge Aaron explained why he said, wait, now considering the administrative involvement of Bender and Bender, I'm going to go up. $500 an hour wasn't enough, so he went to $750. Counsel, what about a claim made by opposing counsel that when Mr. Fields got his motion, he didn't object at all? That he got a great result. He lost several times, and then Mr. Bender got him $160,000, and he got him back to his date of, his first date of claim disability. It was a fabulous result, right? Right. Yes, yes. Is your question why the government did not object to the four or six fee request? No, not the government, Mr. Fields didn't object. When Mr. Fields, well, we have the contingency fee agreement and the language there, and what it says is that Mr. Fields agreed that Bender and Bender could be compensated up to 25% of the contingency fee agreement, but it was also states in the next sentence making very clearly that it was subject to judicial review. Right. Right. And that judicial review was undertaken by Judge Aaron in this case. No, we understand, but I don't think you've understood. We have a prior case which said that where the disabled person expressly agreed, then there is no reduction from the 25%. We have a case that says that. Here, it wasn't that dramatic. Mr. Fields didn't expressly agree, but he didn't disagree at that time. So why isn't this case sufficiently like our prior case, which went that way? Are you referring to Wells, Your Honor? Yeah, I don't remember that. I have a name here, but it's in my own handwriting, so I can't read it. Your Honor, I'm not sure that the statement that you award, you basically award 25% of the pass-through benefits per se. In Gisbrecht, the Supreme Court expressly said, and also was echoed in Wells in this court, that is not the case. You do not presume that the 25% of pass-through benefits, it's what's due. And in Gisbrecht, the court specifically said that the windfall reasonableness factor requires looking at the fee requested and then the time spent on the case. That necessarily invites an effective hourly rate review, a de facto- And the difficulty of the case and the result. I'm sorry? You look at all those factors you mentioned, plus the difficulty of the case, plus the result, don't you? Right. And Judge Aaron did look at that. And with an effective hourly rate that is three and a half times what he would otherwise get- When did Judge Aaron, did the government object? Without putting too much emphasis on the semantics, we alerted, because reasonable minds can differ, and this is an abusive discretion standard- What did you do? What did the government say? Yes, we alerted Judge Aaron to the fact that the requested amount on an effectively hourly basis was within the range that courts, that various district courts had awarded in the Second Circuit. But we pointed out to Judge Aaron that it was on the higher end, which it was. That's undisputed. Did you object? I'm sorry? Did you object? I mean, what you said is- Interesting, but did you object? Did you say it's too high? We said, we essentially said that- We need to put this in the proper context as well, that the- It's not a trick question. It's not a trick question. Did you object to the fee application? Your Honor, the government takes a position that this is just in view of this, that, and the other is too high. That's what- So I'm not- Right. That's generally the flavor with which we responded in our letter to the court. Why did you do that? Why did you do that? I mean, you know, it's not money out of your pocket, out of just general well-feeling for this poor plaintiff, a poor disabled person who is not objecting. You're out looking after him after you fought all the way up to keep him from getting his benefits, and now all of a sudden you're saying- And lost. I don't think it's as anomalous as is suggested because in the benefits context, the Social Security Administration is not supposed to be the adversary of a claimant. I know they're not supposed to be the adversary, and I've been here for 27 years, and I've seen maybe one case in which the government was not the adversary. Counsel- Come on now. No, what I mean is that the fact that the plaintiff is awarded benefits does not mean that the government would then be expected to resist an opportunity to alert the court when perhaps too much of past due benefits is going to go to counsel- Counsel- What did you say? Tell us precisely what you said to the court in this letter you just adverted to. If I may have a second, Your Honor, just to pull it up because I don't want to misspeak. Okay, well, we alerted the court to the factors that should be considered. Counsel- What did you say? I don't want a summary. I don't want your impression. It's not a trick question, counsel. What did you say to the court? Although the court, this court, must make its own determination as to whether a de facto hourly rate of $1,556.98 is reasonable and not a windfall, the commissioner notes that courts within this district and within the Second Circuit have approved and disapproved comparable hourly rates. But a de facto hourly rate of $1,556.98 is on the higher end of what some courts have approved. That's not an objection. Counsel, do you know of your own knowledge if any lawyers in Manhattan are charging $1,556 as an hourly rate? Do you know that? No, no, and certainly not in the context of social security litigation. But is that the going rate for the top lawyers and the top firms? I do not know, Your Honor, to be honest. Anyway, thank you. We'll hear from Mr. Jones. He had two minutes for rebuttal. Thank you, Your Honor. Thank you, Your Honors. I'd like to- I think that actually Judge Parker really hit the nail on the head here in noting that what Magistrate Judge Aaron did in the district court was acknowledge the factors that must be considered, but then didn't actually put them into action in this case. Those are the three windfall factors that we've referred to. Yeah, but opposing counsel has said that what Judge Aaron looked at was what the going rate of this firm was when they do a retainer, and then gave Morvin three times that, which Morvin covers the cases they lose. Now, why isn't that a proper thing to have done? So, two points on that, Your Honor. First of all, I don't believe there's any reason to look to a non-contingent rate until there's been a finding of windfall under the three windfall factors, and that was never done here. Secondly, concerning the Suida or Suedo case that opposing counsel refers to that notes a particular non-contingent hourly rate, that rate under the Equal Access to Justice Act is set by statute. That's not a non-contingent, that's not the rate that an attorney would reasonably charge in the real world. He said that's the rate that this firm charges in non-fair cases. Is he not telling us the truth? He said, he didn't say that's the government rate. We know that's the government rate, but he also said that's the rate that Binger and Binger charges. That's not correct, Your Honor. That's not correct. No, that's not correct. How much does Binger and Binger charge? Well, Binger and Binger doesn't have a non-contingent hourly rate because every case is taken on a contingency basis. The only time that there is a lodestar factor is when there's an award under the Equal Access to Justice Act, and those rates are set by statute. And that pays nothing. So that, in the Suida case, the district judge there referred to the statutory rate under the Equal Access to Justice Act in that case. So the other thing I'd like to address just quickly is that Mr. Pantoja referred to a number of district court cases that have found $500 an hour is an extent that those cases didn't undertake a windfall analysis, that those cases were wrongly decided. There are some cases that were correctly decided. We talk about this in our reply brief where all the plaintiff's attorney did, for example, was file a complaint and it was immediately remanded, or the case was remanded for something unrelated to what the attorneys did. Not a case like this that's been appealed multiple times, including a detailed brief submitted to the district court. Also, I just would note that a lot of times that particular hourly rate is higher or lower just based on how much past due benefits there is or how many hours were expended on the case. It's not a reflection necessarily of the quality of the work done on the case. And oftentimes those cases haven't been appealed to the circuit only because the cost of appealing a case, which doesn't result in any additional fees to plaintiff's counsel, isn't worth it. So those district court cases really have no precedential value in determining whether the district court here erred. So just in summary, I think that the district court here did actually mention the appropriate windfall factors, and under none of those factors did the district court find that counsel for plaintiff performed unsatisfactorily. And so for those reasons, I think that this court should reverse and order the fees requested, but at the very least should remand the case to properly make consideration on if there's windfall or not. And if the court has any further questions, I'm happy to take them. We've been rather hard on you, but that's our job. Counsel, thank you both. We'll reserve decision.